1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13

| | |
|---|---|
| COURTNEY CHAVEZ and CARTER CHAVEZ,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR CREDIT COMPANY, LLC,<br><br>Defendant. | Case No. 1:23-cv-01205-SKO<br><br>ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND RELATED MOTION TO STRIKE<br><br>(Docs. 27, 28, & 43) |

14

## I.    INTRODUCTION

15    Plaintiffs Courtney Chavez ("Mrs. Chavez") and Carter Chavez ("Mr. Chavez")

16 (collectively, "Plaintiffs") bring this action against Defendant Ford Motor Credit Company, LLC

17 ("Ford Credit") alleging causes of action under the California Legal Remedies Act, the California

18 Consumer Reporting Agencies Act, and the Fair Credit Reporting Act.  (Doc. 1-1.)  On January 23

19 and 24, 2025, respectively, Plaintiffs and Ford Credit filed motions for summary judgment or partial

20 summary judgment.  (Docs. 27 & 28.)  The parties filed their respective oppositions on February 6

21 and 7, 2025 (Docs. 31 & 36), and the parties replied on February 18, 2025 (Docs. 38 & 41).

22    Because the matters were deemed suitable for decision without oral argument pursuant to

23 Local Rule 230(g), the Court vacated the hearing set for March 26, 2025, and took the matters under

24 submission.  (Doc. 47.)

25    For the reasons set forth below, Plaintiffs' motion for summary judgment or partial summary

26 judgment will be denied, Ford Credit's motion for summary judgment or partial summary judgment

27 will be granted in part and denied in part, and Plaintiff's motion to strike will be denied.[1]

28

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (*See* Doc. 21.)

## II.    EVIDENTIARY OBJECTIONS

In evaluating a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings, deposition testimony, answers to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court has reviewed each of the evidentiary objections submitted by the parties and the responses thereto. (*See* Docs. 35, 40, 42.) Many of the objections are based on lack of foundation or hearsay. These evidentiary objections are overruled for the purposes of this motion (some are addressed with more specificity below). *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("When evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." (citation omitted)); *see also City of Lincoln v. United States*, No. 2:16-CV-1164-KJM-AC, 2020 WL 5107613, at *5 (E.D. Cal. Aug. 31, 2020) (citing *Burch* and overruling objections based on lack of foundation for purposes of summary judgment motion); *Russell v. Walmart Inc.*, No. CV 19-5495-MWF (JCX), 2020 WL 5289889, at *4 (C.D. Cal. Aug. 17, 2020) (citing *Burch* and overruling "garden variety evidentiary objections" based on lack of foundation, lack of proper authentication and hearsay; noting that while such objections may be cognizable at trial, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant facts at trial, and not the form of the facts as presented in the motion for summary judgment).

The parties further object to the evidence on the grounds of relevance. The Court notes that it must determine whether a fact is relevant and material as part of "the summary judgment standard itself," *Burch*, 433 F. Supp. 2d at 1119, and any evidence deemed irrelevant was omitted from the Court's summary of the facts and contentions. Further, the Court, as a matter of course, has not factored into its analysis any statements identified by either party that are speculative or represent a legal conclusion. *See Burch*, 433 F. Supp. 2d at 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise

2

will not be considered on a motion for summary judgment") (citation omitted, emphasis in original).

Thus, the Court has relied upon only admissible evidence. In addition, the Court will consider only

those facts that are supported by admissible evidence and to which there is no genuine dispute.

### III.    SUMMARY OF RELEVANT EVIDENCE[2]

**A.    Plaintiffs Lease a New Ford Vehicle**

In or around July 2018, John Andrews, car salesman for Auburn Ford, a dealership, assisted

his stepdaughter, Mrs. Chavez, and her husband, Mr. Chavez, with leasing a new 2018 Ford Escape

(the "Vehicle"). (Docs. 27-1 & 36-5, Andrews Decl. ¶¶ 2–3; Doc. 34, Ford Credit's Resp. to Plts.'

SSUF at 5.) Mr. Andrews drove the Vehicle to Plaintiffs' home and brought with him a lease

agreement for them to review and sign. (Docs. 27-1 & 36-5, Andrews Decl. ¶ 4.)

On July 8, 2018, Plaintiffs entered into a lease with Auburn Ford for the Vehicle (the

"Lease"). (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 1; Docs. 27-3 & 36-2, Snyder Decl. ¶

4 and Ex. A.) In the copy of the Lease produced by Ford Credit during discovery, Section 3 titled

"Other Charges" appears as follows:



(Docs. 27-3 & 36-2, Snyder Decl. ¶ 4 and Ex. A; Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 3.)

The Lease further provides, in pertinent part:

---

[2] The evidence adduced by the parties in conjunction with this motion comprises: (i) Plaintiffs' Separate Statement of Undisputed Facts ("Plts.' SSUF") (Doc. 27-5); (ii) Declarations of John Andrews ("Andrews Decl.") (Docs. 27-1 & 36-5); (iii) Declarations of Rocky Covarrubias ("Covarrubias Decl.") (Docs. 27-2 & 36-6); (iv) Declarations of Matthew R. Snyder and exhibits thereto ("Snyder Decl.") (Docs. 27-3 & 36-2); (v) Ford Credit's Separate Statement of Undisputed Facts ("Ford Credit's SSUF") (Doc. 28-2); (vi) Declaration of Jennifer Scholl and exhibits thereto ("Scholl Decl.") (Doc. 28-3); (vii) Declarations of Matthew J. Esposito and exhibits thereto ("Esposito Decl.") (Docs. 28-4, 32, & 39); (viii) Declaration of Christopher Stormberg ("Stormberg Decl." (Doc. 33); (ix) Ford Credit's Response to Plts.' Separate Statement of Undisputed Facts ("Ford Credit's Resp. to Plts.' SSUF") (Doc. 34); and (x) Plaintiff's Response to Ford Credit's Separate Statement of Undisputed Facts ("Plts.' Resp. to Ford Credit's SSUF") (Doc. 36-1). The summary of relevant evidence is distilled from these sources.

> Upon return of the Vehicle, You must pay the Disposition Fee shown on the front of the lease in Section 3, "Other Charges." If, upon termination of the lease, You enter into a lease agreement or retail installment contract for a new vehicle which is assigned to or administered by [Ford Credit], You will not be required to pay the Disposition Fee.

(Docs. 27-3 & 36-2, Snyder Decl. ¶ 4 and Ex. A; Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 4.)

According to Christopher Stormberg, Business Development Manager for Ford Credit, the handwritten $395 disposition fee ("Disposition Fee") is a "standard fee[]" that is "charged to cover the cost of preparing previously leased vehicles for sale at auction," and it is "not uncommon for paper contracts such as the [Lease]" to include a disposition fee that is handwritten and initialed."[3] (Doc. 33, Stormberg Decl. ¶¶ 1, 3–4. *See also* Doc. 32, Esposito Decl. ¶ 2 and Ex. 1 at 27:16–18 ("Q. Does Ford Motor Credit ever accept contracts that have terms that are handwritten in? A. Yes.").) Plaintiffs each testified in their depositions that they "don't think" that they initialed the Disposition Fee. (Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 5–8 and Exs. B–E.) According to Mr. Andrews, he does "not recall any terms of the [Lease] having been written by hand" and does "not believe there were any handwritten terms on the [Lease] for the Vehicle when [Plaintiffs] signed it in 2019."[4] (Docs. 27-1 & 36-5, Andrews Decl. ¶¶ 5, 8.) Mr. Andrews further declared that in his "nine years as a car salesman," he does "not recall a single time where [he] had a customer sign a

---

[3] Plaintiffs move to strike the Stormberg Declaration on grounds that Mr. Stormberg was not disclosed under Fed. R. Civ. P. 26, that he lacks personal knowledge, and that the declaration is a "sham." (Doc. 43.) Plaintiffs' motion will be denied. First, Mr. Stormberg's testimony is related to Plaintiffs' allegation that the Disposition Fee was the product of a forgery potentially attributable to Ford Credit. As mentioned below (*see* Section V.A.I, *infra*), this allegation is not in Plaintiffs' complaint and appears to have been raised for the first time in their summary judgment motion. As such, the Declaration may be considered. *See Mayeron v. United States*, 308 F. App'x 179, 181 (9th Cir. 2009) (holding district court properly considered evidence that was not timely disclosed because it "related to allegations raised . . . for the first time in [the opposing party's] summary judgment motion.") (citing Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.").) Second, the Declaration indicates that Mr. Stormberg is a Business Development Manager for Ford Credit who had access to Plaintiffs' account and personally reviewed their Lease, thereby satisfying the "particularly low" threshold of personal knowledge required at summary judgment. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) ("[T]he requirement of personal knowledge imposes only a minimal burden on a witness . . . . At summary judgment, the threshold is particularly low because all justifiable inferences must be drawn in favor of the nonmoving party.") (internal quotations and citations omitted). Finally, the Court declines to deem the Stormberg Declaration a "sham declaration" because it does not "flatly contradict earlier testimony." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1224 (W.D. Wash. 2014). In fact, it is consistent with the testimony of Ford Credit's corporate representative. (*Compare* Doc. 33, Stormberg Decl. ¶¶ 1, 3–4 *with* Doc. 32, Esposito Decl. ¶ 2 and Ex. 1 at 27:16–18.)

[4] The undisputed evidence shows that Plaintiffs signed the Lease for the Subject Vehicle in 2018, not 2019. (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 1.) The Court presumes that this is scrivener's error.

contract that contained terms that were handwritten, as opposed to typed," and that, "[i]n general, it has been [his] experience that if terms on a contract, be it a lease agreement or purchase agreement, are incorrect or need changed, the contract would be re-drafted with the corrected terms typed in, not handwritten." (*Id*. ¶¶ 6–7.)

The Lease, which was assigned by Auburn Ford to Ford Credit, was scheduled to terminate on July 8, 2021. (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 2; Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 2, 6.) According to Mr. Stormberg, the Disposition Fee was included in the Lease assigned to Ford Credit. (Doc. 33, Stormberg Decl. ¶ 2 and Ex. A.) Mr. Stormberg further declared that Ford Credit "does not make handwritten changes to [a] lease after it is assigned," and he is "unaware of any instance in which Ford Credit made a handwritten change to the amount of the disposition fee in a lease after it was assigned." (*Id*. ¶ 5.)

**B.    Plaintiffs Do Not Purchase or Lease Another Vehicle from Ford Credit**

Between July 2018 and January 2021, Plaintiffs had two more children, and did not wish to renew the lease for or purchase the Vehicle because it "didn't fit our needs with our growing family." (Docs. 27-3 & 36-2, Snyder Decl. ¶ 6 and Ex. C at 40:3–9.) Plaintiffs wished to "upscale into a larger vehicle . . . [e]ither an SUV or a minivan." (*Id*. at 40:15–16.) Prior to the termination of the Lease, they "looked [] in Fresno for another Ford and there just wasn't anything that would fit what our family was looking for." (*Id*. at 41:4–7.) Mrs. Chavez testified that a "sales rep" at "our Ford dealership" showed them a "very small SUV that looked exactly like our Escape." (Docs. 27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 31:3–32:5.)

Ultimately, Plaintiffs did not purchase or lease a vehicle that was financed by Ford Credit. (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 8.) Instead, in May 2021, Mr. Chavez leased a 2021 Honda Odyssey for his family. (Docs. 27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 32:17–18, 34:11–21; *Id*. ¶ 6 and Ex. C at 42:6–9.)

**C.    Plaintiffs are Assessed the Disposition Fee**

On July 7, 2021, Plaintiffs returned the Vehicle to Lithia Ford of Fresno, a local dealership. (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 9; Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 7.) Mr. Chavez testified that when he dropped off the Vehicle, he asked "if there's anything else

that we owed . . . if there is anything else that we need to do or sign."  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 6 and Ex. C at 54:5–12.)  According to Mr. Chavez, they responded "No, I don't believe so. If there is, then we'll contact you later."  (*Id*. at 54:13–14.)  When Plaintiffs returned the Vehicle, there was a significant shortage of cars for sale across the United States, which affected some Ford dealerships.  (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 11, 12; Doc. 32, Esposito Decl. ¶ 2 and Ex. 1 at 51:15–21.)

Upon return of the Vehicle, Ford Credit assessed Plaintiffs the Disposition Fee in the amount of $427.98, which was comprised of the $395 fee plus $32.98 in taxes.  (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 9.)  The next day, July 8, 2021, Ford Credit mailed Plaintiffs an invoice in the amount of $427.98.  (*Id.* at 10.)  Mr. Chavez testified that "sometime in the tail end of 2021, a letter or an email from Ford Credit let [Plaintiffs] know that this amount was due and owing."  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 6 and Ex. C at 60:17–24.)

**D.     The Disposition Fee is Charged Off**

Plaintiffs did not pay the Disposition Fee.  (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 11.)  On February 15, 2022, Ford Credit "charged off"[5] Plaintiffs' account with a balance of $427.98.  (*Id*. at 13.)  On March 1, 2022, Ford Credit updated its credit reporting to reflect that the Lease had been charged off with a balance of $427.  (*Id*. at 14.)

At that same time, Plaintiffs were looking to purchase a home.  (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 19.)  Plaintiffs asked Mrs. Chavez's father Rocky Covarrubias, who is a mortgage broker, for assistance in getting approved for a mortgage.  (*Id*. at 20; Docs. 27-2 & 36-6, Covarrubias Decl. ¶¶ 3–4.)  Mr. Covarrubias checked Plaintiffs' credit reports and discovered the charge off by Ford Credit.  (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 21; Docs. 27-2 & 36-6, Covarrubias Decl. ¶ 6.)  He showed Plaintiffs the reports reflecting the charge off.  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 62:15–63:3; *Id*. ¶ 6 and Ex. C at 73:9–20.)

**E.     Plaintiffs Dispute the Charge Off**

Ford Credit received Automated Consumer Dispute Verification ("ACDV") forms dated

---

[5] "Charge off" is a "term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely."  *Hickson v. Experian Info. Sols., Inc*., No. 6:21-CV-00370-AA, 2023 WL 2734795, at *1 (D. Or. Mar. 31, 2023) (citing *Charge Off*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

March 18, and 19, 2022, from the credit reporting agencies indicating Plaintiffs disputed the charge off.  (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 15, 16.)  The ACDV forms each state that "Consumer states inaccurate information" and "long story about fees and lack of car inventory." (*Id.* at 17; Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 11–12 and Exs. H–I; Doc. 28-3, Scholl Decl. ¶¶ 15–17 and Exs. 23–26.)  Each ACDV form also indicates that Plaintiffs were willing to pay the Disposition Fee if Ford Credit instructed the credit reporting agency remove the reporting regarding the charge off.  (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 18; Docs. 27-3 & 36-2, Snyder Decl. ¶ 11–12 and Exs. H–I; Doc. 28-3, Scholl Decl. ¶¶ 15–17 and Exs. 23–26.)  In response to the ACDVs, Ford Credit reviewed its system of record and found that Plaintiffs had failed to pay the Disposition Fee.  (Doc. 28-3, Scholl Decl. ¶ 17; Docs. 27-3 & 36-2, Snyder Decl. ¶ 9 and Ex. F at 60:20-25, 63:8–10.)  Ford Credit also confirmed that the unpaid amount was $427 and that the balance had been charged off.  (Doc. 28-3, Scholl Decl. ¶ 17.)  Ford Credit testified that they would not "reach out to the dealer that accepted a returned leased vehicle in response to" an "indirect dispute" regarding fees, and they "never inquired with Lithia Ford about whether Lithia Ford had any inventory available for lease or purchase."  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 9 and Ex. F at 63:4–7, 63:24–64:2.)

**F.    Plaintiffs' Credit Scores Decrease**

Between July 3, 2020, and March 15, 2022, at least one of Plaintiffs' respective credit scores decreased.  (Doc. 28-4, Esposito Decl. ¶ 20 and Ex. 19; Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 13, 17 and Exs. J, N.)[6]  According to Plaintiffs, this decrease was the result of the charge off reported by

---

[6] Ford Credit objects to Plaintiffs' credit reports attached to the declaration of their counsel.  (*See* Doc. 35 at 4–4; Doc. 40 at 5–6.)  Although perhaps not in a form adequate to make the attached credit report excerpts admissible at trial, the declaration does satisfy Fed. R. Civ. P. 56(c)(4)'s requirement of setting forth evidence that will be presented in admissible form at trial, as Ford Credit has identified nothing that suggests that the credit reports attached to counsel's affidavit could not be admitted at trial with the appropriate foundation under the "records of regularly conducted activity" exception to the hearsay rules, Fed. R .Evid. 803(6).  *See, e.g.*, *United States v. Beecroft*, 608 F.2d 753, 761 (9th Cir. 1979) (credit report "properly admissible under the business records [Rule 803(6)] exception."); *Semper v. JBC Legal Grp.*, No. C04-2240L, 2005 WL 2172377, at *5 n.11 (W.D. Wash. Sept. 6, 2005) (same).  Moreover, Ford Credit itself relies on an objected-to credit report (*see* Doc. 28-4, Esposito Decl. ¶ 20 and Ex. 19; Doc. 28-1 at 27; Doc. 31 at 29; Doc. 38 at 13), and thereby has waived any objection thereto.  *Vega v. Alameida*, No. CIV S03-2433 MCEKJMP, 2007 WL 214599, at *3 (E.D. Cal. Jan. 25, 2007) ("Defendant has waived any objection to consideration of the videotape by submitting it himself.") (citing *Motor Club of America Ins. Co. v. Hanifi*, 145 F.3d 170, 175 (4th Cir. 1998) (court properly relied on hearsay in police report to establish material issue in summary judgment motion; defendants' "waived any objection to the admissibility of that report when they submitted it to the court on at least three

Ford Credit.  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 63:4–22; *Id.* ¶ 6 and Ex. C at 73:13–74:1.)  Mr. Chavez testified that Plaintiffs "were in conversation with an owner of a house" they wanted to purchase, and the charge off "dropped our numbers substantially, in that we would not have been able to afford that house that we were currently . . . in talks trying to purchase."  (*Id.* ¶ 6 and Ex. C at 73:20–74:1.)  According to Mr. Covarrubias, there were "at least two homes that [Plaintiffs] wanted to make an offer on that, with their decreased credit scores, they were no longer able to afford."  (Docs. 27-2 & 36-6, Covarrubias Decl. ¶ 9.)

**G.      The Credit Reporting Agencies Remove the Charge Off**

In July 2022, after receiving a notice letter from Plaintiffs' counsel, Ford Credit submitted a request to the credit reporting agencies that they update their information to indicate that the account status was "paid or closed account/zero balance."  (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 30; Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at 20; Doc. 28-3, Scholl Decl. ¶ 20 and Exs. 29–30.)  Ford Credit wrote Plaintiffs' counsel in August 2022 to inform him that "out of concern for [Mrs.] Chavez as a customer, the charges of $427.98 have been waived" and the "major reporting credit agencies removed the charge off from [Mrs.] Chavez's credit file."  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 9 and Ex. F at 21:4–22:20.)

Following the removal of the charge off, Mr. Covarrubias was able to help Plaintiffs get a mortgage and purchase a home.  (Docs. 27-2 & 36-6, Covarrubias Decl. ¶ 10.)  Plaintiffs bought a home with a $394,125 mortgage, purchasing two points for $7,882.50 that brought their 30-year fixed interest rate down to 4.5%.  (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 32–33; Docs. 27-2 & 36-6, Covarrubias Decl. ¶ 12.)  The average rate for a 30-year fixed mortgage when Plaintiffs were searching for a home in March 2022 was 4.172%.[7]  (Doc. 36-7, Ex. A at p. 51.)

**H.      Plaintiffs File the Present Suit for Damages**

On July 5, 2023, Plaintiffs filed a complaint in the California Superior Court of Fresno

---

occasions")).  The objections are overruled, and the credit reports will be considered for purposes of the motions for summary judgment.

[7] The Court takes judicial notice of the prevailing 30-year fixed mortgage interest rates and overrules Ford Credit's objections (Doc. 35 at 4, Doc. 40 at 4).  *See In re Pomrenke Mining, LLC*, No. 19-00083-GS, 2020 WL 4528443, at *17 (Bankr. D. Alaska Aug. 5, 2020) ("Courts may generally take judicial notice of prevailing interest rates.") (citing Fed. R. Evid. 201 and collecting cases).

County, California.  (*See* Doc. 1-1.)  Ford Credit removed the action to this Court on August 11, 2023, based on federal question jurisdiction.[8]  (*See* Doc. 1.)

In their complaint, Plaintiffs allege a claim under the California Legal Remedies Act, Cal. Civ. Code § 1770; the California Consumer Reporting Agencies Act, Cal. Civ. Code § 1785.25(a); and the Fair Credit Reporting Act, 15 U.S.C. § 1681-s2(b), alleging that Ford Credit's reporting of the charged-off Disposition Fee is inaccurate, causing damage to Plaintiff's credit history.  (*See* Doc. 1-1.)  Plaintiffs seek actual damages, statutory damages, and attorney's fees and costs.  (*See id.*)

## IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party."  *Id.*  By contrast, if the nonmoving party will have

---

[8] Along with Ford Credit, Plaintiffs originally sued the credit reporting agencies.  (*See* Doc. 1-1.)  These defendants were voluntarily dismissed with prejudice in 2023 and 2024.  (*See* Docs. 9, 10, 14, 15, 17, 19.)

[9] Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D.Cal.1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v. ChemTronics*, 16 F.Supp.2d. 1192, 1200 (S.D. Cal. 1998).

1  the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence

2  of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

3       If the movant satisfies its initial burden, then the nonmoving party must go beyond the

4  allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative*

5  *evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th

6  Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice

7  in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475

8  U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent

9  must do more than simply show that there is some metaphysical doubt as to the material facts.")

10 (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find

11 for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting

12 *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

13      In resolving a summary judgment motion, "the court does not make credibility

14 determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the

15 province of the fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the non-

16 movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Inferences,

17 however, are not drawn out of the air; the nonmoving party must produce a factual predicate from

18 which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp.

19 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

20                          **V.    DISCUSSION**

21      Both parties seek summary judgment, or partial summary judgment, on Plaintiffs' claims

22 under the California Consumer Reporting Agencies Act ("CCRAA") and the Fair Credit Reporting

23 Act ("FCRA"). (*See* Docs. 27 & 28.) Additionally, Ford Credit seeks summary judgment on

24 Plaintiffs' claim under the California Legal Remedies Act ("CLRA"). (*See* Doc. 28.) The Court

25 shall address, in turn, each of Plaintiffs' claims that are the subject of the motions for summary

26 judgment.

27

28

**A.**     **Summary Judgment is Appropriate on Plaintiffs' CLRA Claim**

       1.     <u>Plaintiffs' CLRA Claim is Preempted by the FCRA</u>

Ford Credit first contends that it is entitled to summary judgment on Plaintiffs' first cause of action under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750 *et seq*., because it is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"). The Court agrees.

Generally, the FCRA does not preempt any state law. 15 U.S.C. § 1681t(a); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1166 (9th Cir. 2009). However, there are several exceptions to the general rule, including the regulation of the responsibilities of those who furnish information to consumer reporting agencies. Title 15 U.S.C. § 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply . . . with respect to section 1785.25(a) of the California Civil Code.[10]

Section 1681s-2, in turn, imposes specific duties and responsibility on 'furnishers' . . . which furnish information to credit reporting agencies." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235 (9th Cir. 2023) (citing § 1681s-2). Section 1681s-2(a) requires that furnishers provide accurate information to credit reporting agencies by, for example, refraining from reporting inaccurate information when furnishers have knowledge of errors or have received notice and confirmation of errors, and correcting and updating the credit reporting agencies if previously provided information is incomplete or inaccurate. *Id*. (citing §§ 1681s-2(a)(1)-(5)).

In their complaint, Plaintiffs plead that Ford Credit "regularly provided information to consumer reporting agencies and is therefore an information furnisher," and that Ford Credit "furnished inaccurate, false, or incomplete information to the consumer credit reporting agencies" and "refused to correct the information reported on Plaintiff's [*sic*] consumer credit report," resulting in a "negative effect on Plaintiffs' credit score." (Doc. 1-1 ¶¶ 11, 23, 26.) Their CLRA claim is based solely on these allegations. (*Id*. ¶ 44 ("[Ford Credit]'s actions as detailed above

---

[10] Plaintiffs' second cause of action is brought under Cal. Civil Code § 1785.25(a) and is therefore not preempted by the FCRA.

1    constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770 . . . ." *See also*

2    *id*. ¶ 43 ("Plaintiffs incorporates the foregoing paragraphs as though the same were set forth at length

3    herein.").)    As such, Plaintiffs' CLRA claim is preempted by section 1681t(b)(1)(F) of the FCRA

4    because it is "with respect to . . . subject matter regulated under . . . section 1681s-2."  15 U.S.C. §

5    1681t(b).[11]  *See Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181–82 (E.D. Cal. 2005) (finding state

6    law claims, including CLRA claim, preempted where the claims were "based on alleged injury

7    arising purely from the reporting of credit information by a furnisher of credit" and arose from the

8    "allegation that [the defendant] reported erroneous credit information to the national [credit

9    reporting agencies].").  *See also Kozlowski v. Bank of Am.*, N.A., No. 1:18-cv-00131-DAD-EPG,

10    2018 WL 2096381, at *6–7 (E.D. Cal. May 7, 2018) ("Plaintiff's allegations that defendants

11    furnished inaccurate information to consumer reporting agencies falls squarely within the provisions

12    of § 1681s-2(a).  The court concludes that plaintiff's negligence and defamation claims are thus

13    preempted by the FCRA and must therefore be dismissed."); *Ali v. Cap. One*, No. 1:11-CV-02115-

14    LJO, 2012 WL 260023, at *4–5 (E.D. Cal. Jan. 27, 2012) (state law claim based on allegation that

15    the defendant furnished inaccurate information to consumer reporting agencies knowing that the

16    information was false was "completely preempted by the FCRA").

17        In their opposition to Ford Credit's motion for summary judgment, Plaintiffs contend that

18    their CLRA claim is not preempted because it is "based on Ford Credit's decision to misrepresent

19    the existence of a disposition fee by forging the lease agreement."  (Doc. 36 at 28.)  This allegation

20    does not appear in Plaintiffs' complaint.[12]  (*See* Doc. 1-1 ¶¶ 17–42.)  In essence, Plaintiffs are

21    attempting to amend their complaint through their opposition brief.  This is improper, and so the

22    Court does not consider Plaintiffs' argument, or the declarations offered in support of it (*see* Docs.

23    36-3 & 36-4).  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (holding

24

25    [11] The Ninth Circuit recently has cautioned that "§ 1681t(b)(1)(F) does not preempt state law claims against a defendant
     who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the
26    claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information
     under the FCRA."  *Aargon Agency, Inc*., 70 F.4th at 1235 (quoting *Galper v. JP Morgan Chase Bank, N.A*., 802 F.3d
27    437, 446 (2d Cir. 2015)).  However, because Plaintiffs' CLRA claim against Ford Credit is based on allegedly false
     information Ford Credit supplied to credit reporting agencies, it "fits squarely within the activities regulated by § 1681s-
28    2."  *Khankin v. JLR San Jose, LLC*, 720 F. Supp. 3d 816, 825 (N.D. Cal. 2024).
     [12] It also does not appear in Plaintiffs' CLRA pre-suit notice letter to Ford Credit.  (*See* Doc. 1-1 at 13–15.)

1  that a plaintiff could not raise new allegations supporting her claim for the first time at summary

2  judgment); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply

3  put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")

4  (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))).  *See also Terpin v. AT*

5  *And T Mobility LLC*, 118 F.4th 1102, 1113 (9th Cir. 2024) (district court did not err by declining to

6  consider "new theory" of liability raised for the first time in response to a motion for summary

7  judgment); *James v. Gen. Dynamics Land Sys. Inc*., 582 F. Supp. 3d 673, 680 (D. Alaska 2022)

8  ("Plaintiff cannot maintain a new theory of liability to avoid summary judgment that was not

9  adequately presented in the operative complaint.").

10          2.    Plaintiffs Could Not Prevail on their CLRA Claim as Pleaded

11          Even were their CLRA claim not preempted, Plaintiffs could not prevail because Ford

12  Credit's conduct as alleged in the complaint is not covered by that statute.[13]  The CLRA makes

13  unlawful "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by

14  any person in a transaction intended to result or that results in the sale or lease of goods or services

15  to any consumer." Cal. Civ. Code § 1770(a).  Plaintiffs offer no authority for the proposition that a

16  consumer may seek relief under the CLRA from an entity, like Ford Credit, who provided services

17  to third parties, like the credit reporting agencies.  *See Lee v. Equifax Information Services, LLC*,

18  No. RG12660482, 2014 WL 12629237, at *2 (Cal. Super. Oct. 31, 2014) (sustaining demurrer to

19  CLRA claim based on the furnishing of information to a consumer credit reporting agency), *aff'd*,

20  *Lee v. K.B.R., Inc*., No. A159980, 2021 WL 6058080, at *3 (Cal. Ct. App. Dec. 22, 2021).

21          Moreover, "[b]y definition, the CLRA does not apply to unfair or deceptive practices that

22  occur *after* the sale or lease has occurred."  *Fierro v. Cap. One, N.A.*, 656 F. Supp. 3d 1121, 1129

23  (S.D. Cal. 2023) (quoting *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014))

24  (emphasis in original); *see also Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal. App. 4th 824,

25  837 n.6 (2006) ("In any event, those representations, such as they were, occurred in 2000 and 2001,

26  not at the time of sale [nearly a decade earlier]."); *Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-

27

28  [13] For the reasons stated in Section V.A.I, *supra*, Plaintiffs cannot for the first time raise new allegations supporting their claim for the first time at summary judgment. *See Pickern*, 457 F.3d at 968–69.

JST, 2020 WL 9848766, at *16 (N.D. Cal. May 14, 2020) (concluding claim lacked plausibility where the plaintiff did not allege the defendant's conduct occurred before the "decision to initially contract"). Here, as the basis of Plaintiff's CLRA claim is Ford Credit's post-Lease conduct of furnishing of inaccurate information to the credit reporting agencies, such claim is not actionable.

In sum, because Plaintiffs' CLRA claim is preempted by the FCRA, and because they could not prevail on that claim in any event, Ford Credit is entitled to summary judgment.

**B.    Fact Issues Preclude Summary Judgment on Plaintiffs' CCRAA Claim**

Section 1785.25(a) of the California Consumer Reporting Agencies Act ("CCRAA") provides: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). *See also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010). Plaintiffs allege a section 1785.25(a) claim based on the allegation that Ford Credit, knowing that the information was false, reported to credit reporting agencies that Plaintiffs owed the charged-off Disposition Fee. (Doc. 1-1 ¶¶ 22–23.)

1.    <u>Whether Ford Credit Furnished "Incomplete or Inaccurate" Information is Disputed</u>

The phrase "incomplete or inaccurate" in § 1785.25(a) requires furnishers of credit information from "not only refrain[ing] from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading." *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1108 (E.D. Cal. 2017) (quoting *Kuns v. Ocwen Loan Servicing, LLC*, 611 F. App'x 398, 400 (9th Cir. 2015)). *See also Carvalho*, 629 F.3d at 890–91.

There is a genuine issue of fact as to whether the information that Ford Credit furnished to the credit reporting agencies was "incomplete or inaccurate" because whether Plaintiffs owed the charged-off Disposition Fee is in dispute. While Plaintiffs have adduced evidence that the handwritten, initialed Disposition Fee was the product of forgery potentially attributable to Ford Credit (*see* Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 5–8 and Exs. B–E[14]; Docs. 27-1 & 36-5, Andrews

---

[14] Ford Credit contends that the Court should decline to consider Plaintiffs' two changes to their deposition testimony under Fed. R. Civ. P. 30(e) on grounds that they are "transparent sham amendments intended to defeat summary judgment." (Doc. 28-1 at 22–23 (citing *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.,* 397 F.3d 1217, 1224

Decl. ¶¶ 5–8), Ford Credit has presented testimony that it does not make handwritten changes to a lease after it is assigned and that handwritten and initialed disposition fee provisions in leases are "not uncommon."  (Doc. 33, Stormberg Decl. ¶¶ 1, 3–5; Doc. 32, Esposito Decl. ¶ 2 and Ex. 1 at 27:16–18.)  Ford Credit also points to discovery responses wherein Plaintiffs admit that the copy of the Lease produced by Ford Credit during discovery, which contains the Disposition Fee, is a "true and correct copy" of the Lease they signed (Doc. 28-4, Esposito Decl. ¶¶ 3, 5 and Exs. 3, 5).

Plaintiffs assert in the alternative that, notwithstanding their agreement to pay it, they did not owe the Disposition Fee because the "availability of inventory to purchase or lease" was an "implied condition precedent" to their obligation to pay it.  (Doc. 27 at 10–12; Doc. 36 at 15–17.)  According to Plaintiffs, because the summary judgment evidence shows there were "no vehicles available at any of the Ford dealerships near Plaintiffs" at the time the Lease terminated, Ford did not meet the condition precedent, and thus Plaintiffs' obligation to pay the Disposition Fee did not arise.  (Doc. 27 at 11; Doc. 36 at 17.)

Under California law, "[a] condition precedent may not be implied unless it is necessary to make the contract reasonable." [15]  *In re Old Canal Fin. Corp.*, 550 B.R. 519, 531 (C.D. Cal. 2016) (citing Cal. Civ. Code § 1655).)  Conditions precedent "are generally disfavored and are strictly construed against a party arguing the agreement imposes one."  *Est. of Jones*, 82 Cal. App. 5th 948, 953 (2022) (citing *Helzel v. Superior Ct.*, 123 Cal. App. 3d 652, 663 (1981)).  "Courts will not interpret a provision as a condition precedent absent clear, unambiguous language requiring that construction."  *Id.*

For these reasons, the Court is disinclined to find the existence in the Lease of the implied condition precedent advanced by Plaintiffs.  But, even if the Court were to supply such condition precedent, the question of whether the condition precedent occurred, that is, whether there was any inventory of vehicles to purchase or lease from Ford Credit, is in dispute.  As noted above, Plaintiffs

---

(9th Cir. 2005)); *see also* Doc. 35 at 5–6, Doc. 40 at 6 (objections).)  The Court disagrees that Plaintiffs' deposition errata (Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 7–8 and Exs. D–E) "flatly contradict earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment," *Karpenski*, 999 F. Supp. 2d at 1224, and overrules Ford Credit's objections.  But, even if the errata were disregarded, the disputed issues of fact, as discussed above, remain.

[15] As lessor Auburn Ford's place of business is in California, California law applies to the Lease.  (Docs. 27-3 & 36-2, Snyder Decl. ¶ 4 and Ex. A) ("[T]he law that will apply to this lease is the law of the state where the Lessor's place of business is.").)

assert that there were "no vehicles available at any of the Ford dealerships near Plaintiffs," but Mrs. Chavez testified that at her local Ford dealership she was shown a "very small SUV that looked exactly like our Escape." (Docs. 27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 31:3–32:5.) Indeed, the summary judgment evidence suggests not that there were **no** vehicles available to purchase or lease, but instead that the vehicles that were available did not meet Plaintiffs' express need for a larger car. (*Id.* ¶ 6 and Ex. C at 40:3–9; 40:15–16.) Thus, there is a genuine issue of material fact as to the "availability of inventory to purchase or lease" that would, were a condition precedent implied in the Lease, give rise to Plaintiffs' obligation to pay the Disposition Fee.[16]

In sum, the above-described disputed issues of fact as to whether Plaintiffs owed the charged-off Disposition Fee give rise to a factual dispute about the incompleteness or inaccuracy of the information that Ford Credit furnished to the credit reporting agencies.

2.    Whether Ford Credit "Knew or Should Have Known" the Information it Furnished Was "Incomplete or Inaccurate"

"The statutory term 'should have known' imparts a test of reasonableness." *Holmes v. NCO Fin. Servs., Inc.*, 538 F. App'x 765, 766 (9th Cir. 2013) (citing *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989)). "The critical question . . . is thus whether a reasonable [furnisher] . . . would have known" that the furnished information was incomplete or inaccurate. *Id.*

As discussed above, the evidence presented shows there is a triable issue of fact as to whether (a) the handwritten, initialed Disposition Fee was the product of forgery potentially attributable to Ford Credit, and (b) if a condition precedent of "availability of inventory to purchase or lease" were implied in the Lease, that purported condition was met. Thus, there is also a triable issue of fact as to whether a reasonable furnisher in Ford Credit's position knew or should have known that informing the credit reporting agencies that Plaintiffs owed the Disposition Fee was inaccurate. *See, e.g., Griffin v. Navient Sols., Inc.*, No. 15-CV-1818 DMS (DHB), 2016 WL 5719831, at *5 (S.D. Cal. Sept. 30, 2016) (denying summary judgment in view of factual dispute as to whether defendant "had no knowledge, and no reasonable basis on which it 'should have known'" that reported

---

[16] This disputed fact also precludes summary judgment on Plaintiffs' argument that they did not owe the Disposition Fee because their "performance," *i.e.*, leasing or purchasing another vehicle from Ford Credit, was "excused by impossibility." (*See* Doc. 27 at 12–13; Doc. 36 at 17–20.)

1   information was inaccurate).  *Cf. Gorman*, 584 F.3d at 1157 ("summary judgment is generally an

2   inappropriate way to decide questions of reasonableness because the jury's unique competence in

3   applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment")

4   (quotations omitted).

5                3.    Whether Plaintiffs Suffered Actual Damages

6         To prevail on their CCRAA claim, Plaintiffs must show "[a]ctual damage, not 'inherent

7   harm.'"  *Gadomski v. Patelco Credit Union*, No. 2:17-CV-00695-TLN-AC, 2020 WL 1433138, at

8   *4 (E.D. Cal. Mar. 24, 2020) (quoting *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628,

9   637 (2007) *disproved on other grounds by Connor v. First Student, Inc*., 5 Cal. 5th 1026, 1037–38

10  (2018)); Cal. Civ. Code § 1785.31(a).  *See also Duarte v. J.P. Morgan Chase Bank*, No. CV 13-

11  1105-GHK (MANx), 2014 WL 12561052, at *3 (C.D. Cal. Apr. 7, 2014) ("[A] plaintiff cannot

12  recover under the CCRAA without proving actual harm."); *Reagan v. Am. Home Mortg. Servicing*,

13  No. C 11-00704 WHA, 2011 WL 2149100, *3 (N.D. Cal. May 31, 2011) ("a plaintiff must show

14  that the party reporting credit information knew or should have known that the information given to

15  the agency was incomplete or inaccurate, and the plaintiff must be harmed as a result of that

16  inaccurate report.").

17        Here, there is a genuine issue of material fact as to whether Plaintiffs suffered damages as a

18  result of Ford Credit's allegedly incomplete and inaccurate reporting.  Plaintiffs have adduced

19  evidence that (1) after Ford Credit reported the charged-off Disposition Fee to the credit reporting

20  agencies in March 2022, at least one of their respective credit scores decreased; (2) the decrease was

21  the result of the charge off reported by Ford Credit; and (3) as a result, they were no longer able to

22  afford "at least two homes" in which they were in "talks trying to purchase" at that time.  (*See* Docs.

23  27-3 & 36-2, Snyder Decl. ¶ 5 and Ex. B at 63:4–22; *Id*. ¶ 6 and Ex. C at 73:13–74:1; Doc. 28-4,

24  Esposito Decl. ¶ 20 and Ex. 19; Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 13, 17 and Exs. J, N; Docs. 27-

25  2 & 36-6, Covarrubias Decl. ¶ 9.)[17]  Plaintiffs have also presented evidence that following the

26  _____

27  [17] Ford Credit objects to the declaration of Mr. Covarrubias on grounds that he "cannot testify as to what factors
    influence a consumer's credit score" because it is "improper lay opinion and inadmissible," citing Fed. R. Evid. 701.
    (Doc. 31 at 29; Doc. 38 at 13.  *See also* Doc. 35 at 1–3, Doc. 40 at 2–3.)  These objections are overruled.  "[A]n ordinary

28  juror is well-aware that one's credit rating decreases if creditors make negative reports to credit bureaus."  *Neel v. Fannie
    Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 1338382, at *4 (S.D. Miss. Apr. 2, 2014).  Moreover, Mr. Covarrubias

removal of the charged-off Disposition Fee from their credit reports, Plaintiffs purchased two points for $7,882.50 that brought their 30-year fixed interest rate down to 4.5% on the home they bought. (Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 32–33; Docs. 27-2 & 36-6, Covarrubias Decl. ¶ 12.) This interest rate—4.5%—is higher than the average rate for a 30-year fixed mortgage in effect in March 2022, when Plaintiffs were looking to purchase a home (*see* Doc. 34, Ford Credit's Resp. to Plts.' SSUF at 19; Doc. 36-7, Ex. A at p. 51). *See Yackytooahnipah v. Liberty Mut. Fire Ins. Co*., No. SACV 18-00449-CJC(DFMx), 2019 WL 4570034, at *5 (C.D. Cal. Aug. 5, 2019) (actual harm "is not whether a higher or lower number appears on a credit report. . . . [It] is the effect of that number, such as whether Plaintiffs ***had to pay higher interest rates*** or whether they were denied any extensions of credit.") (emphasis added).

Ford Credit counters that Plaintiffs' evidence also shows "other derogatory accounts in March 2022," which could have "influenced the allegedly unfavorable interest rate" due to a lowered credit score.[18] (Doc. 28-1 at 27; Doc. 31 at 29.) But Plaintiffs do not need to show that Ford Credit's "reporting was the only cause of [their] harm"; instead, merely that its reporting was a "a substantial factor in [Plaintiffs'] loss of credit rating to create an issue of fact regarding causation." *Walker v. Higher Educ. Loan Auth. of the State of Missouri*, No. 1:21-CV-00879-KES-SAB, 2024 WL

does not purport to testify as how Plaintiffs' credit scores were calculated during the relevant period, as in the cases relied on by Ford Credit. (*See* Doc. 31 at 29.) Instead, Mr. Covarrubias's testimony goes to the effect of Plaintiffs' decreased credit score on the available interest rates, which is not based on any "scientific, technical, or other specialized knowledge" but instead on his personal knowledge as Plaintiffs' mortgage broker. *See* Fed. R. Evid. 602; Fed. R. Evid. 701. *See also United States v. Lindsey*, 680 F. App'x 563, 566 (9th Cir. 2017) ("The district court did not abuse its discretion in permitting lenders' employees to testify as lay witnesses rather than as expert witnesses . . . [defendant] has offered no explanation for why the witnesses' testimony, which was based on their personal observations while working for the lenders—rather than on scientific, technical, or specialized knowledge—did not qualify as lay testimony."); *United States v. Casher*, No. CR 19-65-BLG-SPW, 2020 WL 2557849, at *5 (D. Mont. May 20, 2020) (permitting bank employees to testify about bank's "specific underwriting policies and lending programs so long as their testimony is based on knowledge they gained through their employment or involvement in [bank's] day-to-day operations.") (citing *United States v. Kerley*, 784 F.3d 327, 339–40, (6th Cir. 2015)); *Consol. Credit Agency v. Equifax, Inc.*, No. CV 03-01229 CAS(CWX), 2004 WL 5644363, at *4 n.5 (C.D. Cal. Aug. 5, 2004) (overruling Equifax's objection to testimony by owner of credit report distributor that "lenders to his customers require Equifax reports" because such testimony "is not dependent on 'specialized observations, the specialized translation of those observations into theory . . . or the application of such a theory in a particular case.'"").

[18] Ford Credit also asserts that Plaintiffs' "loss of opportunity in the mortgage market" damages are "too speculative" and "attenuated" as a matter of law to be recoverable under the CCRAA, relying on the out-of-circuit case *Casella v. Equifax v. Credit Info. Servs*., 56 F.3d 469 (2d Cir. 1995). (Doc. 28-1 at 27–28; Doc. 31 at 27–28.) Instead, persuasive case authority within the Ninth Circuit holds just the opposite: that such damages can be compensable as actual harm. *See Cordero v. Fin. Assistance Inc*., No. C06-02529 MJJ, 2006 WL 3456662, at *7 (N.D. Cal. Nov. 29, 2006) (vacated at plaintiff's request). *Cf. Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *18 (N.D. Cal. Dec. 20, 2017) (rejecting the plaintiff's alleged loss of ability to purchase a property as "too speculative a basis for damages" where the plaintiff "never even identified a particular property that she was interested in buying.").

3568576, at *13 (E.D. Cal. July 26, 2024).  *See also Jugoz v. Experian Info. Sols., Inc.*, No. 16-CV-05687-MMC, 2017 WL 2720184, at *6 (N.D. Cal. June 23, 2017) ("[A] reduced credit score must proximately cause actual injury to support a claim for actual damages under the FCRA.") (citing *Duarte,* 2014 WL 12561052, at *4).[19]  Nevertheless, the existence of triable issues of fact as to whether Ford Credit's reporting was a "substantial factor" in reducing Plaintiffs' credit score—that in turn "proximately caused" their alleged harm—precludes summary judgment.

In conclusion, in view of the genuinely disputed issues of fact discussed above, neither Plaintiffs nor Ford Credit are entitled to summary judgment on Plaintiffs' CCRAA claim.

## C.       Summary Judgment is Denied as to Plaintiffs' FCRA Claim

Plaintiffs claim that Ford Credit violated section 1681s-2(b) of the FCRA.  (Doc. 1-1 ¶ 52.) That section "regulates how furnishers must respond to a notice of dispute from a credit reporting agency."  *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).  In order to prevail on this claim, Plaintiffs must establish (1) a credit reporting inaccuracy existed on their credit report; (2) they notified the consumer reporting agency that they disputed the reporting as inaccurate; (3) the consumer reporting agency notified Ford Credit of the alleged inaccurate information of the dispute; and (4) Ford Credit failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. § 1681s-2(b)(1)(A)–(E).  *Berrow v. Navient Sols. LLC*, 685 F. Supp. 3d 859, 865 (D. Ariz. 2023).  Plaintiffs must also show they suffered damages as a result.  *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 853 (C.D. Cal. 2022) (citing *Gorman*, 584 F.3d at 1154–55 (to have a claim under § 1681s-2(b) a plaintiff must show that the defendant's failure to conduct a reasonable investigation caused the plaintiff to suffer damages)).

The Court has already found with respect to Plaintiff's CCRAA claim that there are genuine issues of material fact as to whether Ford Credit's reporting of the charged-off Disposition Fee was inaccurate and whether Plaintiffs suffered actual damages as a result.  Because the CCRAA "mirrors" the FCRA, the Court reaches the same conclusion as to Plaintiffs' FCRA claim.  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995).

---

[19] Because the CCRAA is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Carvalho*, 629 F.3d at 889 (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)).

As to whether Ford Credit failed to investigate the inaccuracies or further failed to comply with the requirements of the FCRA, the Ninth Circuit has held that the obligation to conduct an investigation impliedly requires that the investigation be "reasonable" and "non-cursory."[20] *Gorman*, 584 F.3d at 1155–57 (noting that the term "investigation" itself denotes a "fairly searching inquiry"). The reasonableness of the investigation and whether policies were followed "will be jury questions in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. *See also Gorman*, 584 F.3d at 1157. "Unless only one conclusion about the conduct's reasonableness is possible, the question is normally inappropriate for resolution at the summary judgment stage." *Gross v. CitiMortgage, Inc*., 33 F.4th 1246, 1252 (9th Cir. 2022); *Gentry v. State Farm Mut. Auto. Ins. Co*., 726 F. Supp. 2d 1160, 1167 (E.D. Cal. 2010) ("The questions of whether an investigation was reasonable and whether a genuine dispute existed are ordinarily questions for the trier of fact."). "Because the notice of the dispute from the CRA informs the furnisher of the nature of the consumer's dispute, the reasonableness of a furnisher's investigation depends in part on the information provided by the CRA." *Martinez v. Am. Express Nat'l Bank*, No. CV 21-8130-DMG (MAAx), 2022 WL 16571194, at *4 (C.D. Cal. Nov. 1, 2022) (citing *Gorman*, 584 F.3d at 1157). If the notice of dispute from the CRA is "scant," the necessary investigation will necessarily be more cursory. *See Sandigo v. Ocwen Loan Servicing*, LLC, No. 17-CV-02727-BLF, 2019 WL 2233051, at *24 (N.D. Cal. May 23, 2019). However, the Ninth Circuit also noted that "[i]n deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken." *Gorman*, 584 F.3d at 1157 n.11.

The Court finds that in this case, as in most others, the jury must determine the reasonableness of Ford Credit's investigation. *See Gorman*, 584 F.3d at 1157; *Guimond*, 45 F.3d at 1333. *See also Shoraka v. Bank of Am*., N.A., No. 8:23-CV-00309-DOC-JDE, 2023 WL 8709710, at *5–6 (C.D. Cal. Dec. 13, 2023) ("Courts in the Ninth Circuit routinely deny summary judgment as to reasonableness of an FCRA investigation.") (collecting cases). In contending that its investigation was reasonable as a matter of law, Ford Credit asserts that the ACDVs provided by

---

[20] It is undisputed that Plaintiffs notified the credit reporting agencies that they disputed Ford Credit's reporting, and that those agencies thereafter notified Ford Credit of Plaintiffs' dispute. (*See* Doc. 27 at 8.)

the credit reporting agencies "disclosed only a narrowly focused dispute based on [Plaintiffs'] offer to pay the disposition fee in exchange for a deletion of the reporting regarding the charge-off," and that, in response, Ford Credit "reviewed its system of record and determined that [Plaintiffs] had not paid the disposition fee at lease end, and that the account was charged off with a balance of $427." (Doc. 28-1 at 31; *see also* Doc. 31 at 25; Doc. 38 at 11.)  But the ACDVs contain more information than Ford Credit admits, including that that reporting was "inaccurate" and a notation that reads "long story about fees and lack of car inventory."  (Doc. 36-1, Plts.' Resp. to Ford Credit's SSUF at; Docs. 27-3 & 36-2, Snyder Decl. ¶¶ 11–12 and Exs. H–I; Doc. 28-3, Scholl Decl. ¶¶ 15–17 and Exs. 23–26.)  A jury could find that, given all of the information in the ACDVs, Ford Credit had a duty to do more than just confirm from its "system of record" that Plaintiffs had not **paid** the Disposition Fee, but rather to determine whether they **owed** it in the first place.  *See, e.g., McDonald v. OneWest Bank, FSB*, No. C10-1952RSL, 2013 WL 858197, at *4 (W.D. Wash. Mar. 7, 2013) (denying summary judgment in favor of the defendant because "[a] jury could determine that, despite the limited information provided by the [credit reporting agency], a reasonable investigation would have involved a review of plaintiff's file (in whatever format it was kept) to determine whether he had signed the original promissory note (i.e., that the debt was his).").  *See also Gorman*, 584 F.3d at 1157 n.11 ("In deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken."); *Soria v. U.S. Bank N.A.*, No. SACV 17-006039CJC(KESx), 2019 WL 8167925, at *8 (C.D. Cal. Apr. 25, 2019) ("[A] reasonable investigation requires more than just a review of the internal records.").  A jury could also conclude Ford Credit's investigation was unreasonable were Plaintiffs to prevail on their claim that the Disposition Fee was a forgery attributable to Ford Credit.  *See Cheetham v. Specialized Loan Servicing LLC*, No. 2:20-CV-762-JCC-DWC, 2021 WL 5205453, at *3 (W.D. Wash. July 19, 2021) ("[A]lthough the information contained in a notice of dispute frames the investigation, the furnisher cannot ignore what it already knows."); *McDonald*, 2013 WL 858197, at *4 ("[T]here is no statutory, policy, or case law justification for allowing a furnisher to ignore what it knows about a consumer's complaint simply because it was not included in the notice from the [credit reporting agencies].").  On the other hand, a jury could side with Ford Credit and

find, for example, that its investigation was reasonable based on the ACDVs and that it had no obligation to contact unnamed dealerships to determine the meaning or veracity of the "lack of car inventory" notation.  *See Gorman*, 584 F.3d at 1160 (rejecting argument that it is "per se unreasonable" for a furnisher to rely solely on internal account records when investigating a consumer dispute.); *see also Sandigo*, 2019 WL 2233051, at *24 (If the notice of dispute from the credit reporting agency is "scant," the necessary investigation will necessarily be more cursory.) The Court therefore finds that there is a genuine dispute of material fact regarding the reasonableness of Ford Credit's investigation, and thus this issue must be resolved by a jury.

Because of the triable issues of fact identified above, both parties' motions will be denied as to Plaintiffs' FCRA claim.[21]

## VI.    CONCLUSION AND ORDER

Based upon the foregoing, Plaintiffs' motion to strike (Doc. 43) is DENIED, Plaintiffs' motion for summary judgment or partial summary judgment (Doc. 27) is DENIED, and Ford Credit's motion for summary judgment or partial summary judgment (Doc. 28) is GRANTED IN PART and DENIED IN PART as follows:

1.    Summary judgment is GRANTED on Plaintiffs' claim under the California Legal Remedies Act; and

2.    Summary judgment is DENIED on Plaintiffs' claims under the California Consumer Reporting Agencies Act and the Fair Credit Reporting Act.

IT IS SO ORDERED.

Dated:   **April 2, 2025**                    */s/ Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE

---

[21] The disputed facts described above also preclude summary judgment in favor of Plaintiffs on their claim that Ford Credit "willfully" violated the FCRA (*see* Doc. 27 at 15–16).  *See Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 672 (9th Cir. 2020) ("Under the FCRA, to show that a violation was willful, a plaintiff must show that the defendant either knowingly violated the Act or recklessly disregarded the Act's requirements.") (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).